Our final case for today, now this afternoon, is Gonzalez v. City of Milwaukee. Mr. Onderegg. Thank you. Thank you. Good morning Judge Wood, Judge Flom, Judge Kennelly, counsel. My name is Rex Onderegg and I represent the plaintiff appellant Martin Gonzalez in this case. And on his behalf, and my own behalf, we'd like to thank you for the opportunity that we're afforded this morning. This appeal stems from an employment discrimination claim that was filed by Mr. Gonzalez who was a City of Milwaukee police officer for nearly 15 years and it is before this court today on an appeal from an order granting summary judgment to the City of Milwaukee. And I originally presented two core issues for this court's review. One challenging the merits of the decision on the motion for summary judgment and the issue as a climate survey conducted in the precinct where Mr. Gonzalez worked. After reading the City's brief and reflecting on this, I've sort of reluctantly come to the conclusion that there's really only one viable issue here before this court and that's the discovery issue. That on the record that was made below in this case, particularly since the discriminatory animus came from a non-decision maker, it's virtually impossible without whatever information could have been obtained from that survey for me to argue against the merits of a summary judgment decision. So given that the way the termination actually happened here, in other words, yes it's referred by the local commander, I guess O'Leary or Flowers or both of them to the police chief, but it's the police chief that makes a decision, there's a hearing and so on and so forth. How does the climate survey, which involves the non-decision makers, how does it help you? In other words, let's say that the climate survey says there's this, you know, anti-white atmosphere at the particular district. How does that help you in the case? Right, and I've given that a lot of thought and I anticipated that question and it is extremely difficult for me. I understand that the burden here is rather imposing one for Mr. Gonzalez of trying to find substantial prejudice, actual and substantial prejudice and it sort of depends on what would have been in that survey. All I can say is that the survey was an instrument, we don't know a lot about it, I mean we know that for example, it pertains to the same district, we know that it was initiated by Internal Affairs, we know that it dealt with discrimination. And do we know when it was initiated? Because the city gives the impression in its brief that one of the reasons they're arguing it wasn't relevant is because it covered a time period after Mr. Gonzalez's departure. We don't really know, I don't think on this record exactly when it was initiated. My client was under the impression that it was sometime in the latter part of 2012, early part of 2013, but that hasn't been identified. And Judge Kennelly, I don't want to leave your question unanswered because I think it is a good one, it's just that I don't know exactly what would have been in that survey except if it had established for example, a pattern of referring Caucasian officers for disciplinary matters, for formal discipline for circumstances like Mr. Gonzalez's that put him in that situation to begin with. Or had the climate there become so infected with this problem that other individuals that also had authority there were perhaps doing Captain O'Leary's bidding, either to curry favor with him or out of fear. It's just that the ... So basically you're saying it's hard to know without seeing the thing. That's exactly what I'm saying. Let me ask you this question. One of the other points the city makes in their brief is that even though you weren't, even though Judge Adelman declined to give you the climate survey or declined to order them to give you the climate survey, you still get to take depositions and the city makes the point, well you could have asked the opponents in the decisions about the climate survey. What about that? Did you ask them about it and if not, why didn't you? Well, the council that represented Mr. Gonzalez in this case, I don't think took ... It wasn't you, I'm sorry. Yeah, I didn't take depositions in this particular case, so ... So there weren't any depositions that were taken after that then? There weren't, right. Okay. But I think what we've got here is, I mean, although it's difficult for me to establish the type of prejudice because I don't have access to the document, the one thing that we do have is a document that I don't, from what we can glean about it from the record, I don't think could be any more in line with Mr. Gonzalez's claims in this case. And I guess I also wanted to bring up, there had been references to his attempts to obtain this through open records request. So I'm going to just say, I mean, I'm willing to give you the benefit of the doubt that the kind of document this is could fall pretty easily in the terms of the discovery requests also. And so even if there was a second track, I'm not sure that helps. But I want to go back to your idea that maybe it was the climate in District 4 or the practices of flowers or somebody that caused him to be referred to the PPD. I'm actually uncomfortable with a rule of law that says, once the PPD has it, they do their investigation, there's a full-blown hearing, the chief of police, on the basis of the evidence gathered at that hearing, concludes that a particular action, in this case dismissal, but it could be anything, is appropriate. It doesn't mean that he had a right to stay. Maybe other people should have also been looked at carefully. As you were suggesting, the idea that Ford and he are comparable is pretty hard to sustain given all the differences in their disciplinary history and the reason why they were off taking care of children and so on. So if the discriminatory act is his showing up before the professional performance division, that's a tricky one. Are you referring to this sort of this cat's paw? Well, that was your theory, that the survey, the climate survey would show it was only the white officers who got referred to PPD and the minority officers were not. Right. But that's one thing that I'm speculating that the survey might. But once he gets to PPD, he gets a huge amount of opportunity to make his own case for himself. Right, it's just the idea is that he wouldn't have been put into that position that the same kind of offense that put him in front of the PPD and allowed him to be dismissed is something that generally was not considered that egregious and would have been overlooked had it not been for the fact that he was a Caucasian officer. But we have no evidence of anybody who meets the criteria that you're describing from District 4 or from anywhere else as far as I know. Just the officer Dodd is the one. Right, just the one person who had to go down because his daughter was in a bus accident in Atlanta, yeah. That's correct. I will keep my rebuttal time if I could. All right, you may do that. Ms. Reagan. Good morning. Well, I'm a little surprised by that turn of events that he's dropping the merits argument because in his complaint, he does not allege harassment. He only alleges that he was discharged from employment for misconduct and that that was So to say he needs the climate survey to show what? Harassment? It's not a pending claim. Procedurally, this idea that this discovery was kept from him is a red herring. It was never formally asked for in written discovery. Well, but really his requests, which are they? Request number 2 and request number 26 both seem to call for documents pertaining to, among other things, internal investigations or documents pertaining to complaints of discrimination, including investigations conducted. I mean, this looks like an investigation. There is nothing in the record that this climate survey had to do with discrimination. How could he possibly find that out without seeing it? I mean, how do we know what it does involve, I guess, is the question. Well, I can tell you. You're saying there's nothing that proves that it doesn't involve that, but how do we know what it does involve? The thing is he had his moment, the appellant had his moment to convince Judge Edelman that this fell within the discovery bounds. And now we're reviewing that, so you need to answer Judge Connelly's question. What should have clued him in about whether this survey was either, it was his district, number one, was dealing with the officer that he reported to. So there's one sign of relevance right there. This is my area. Why have you picked on this to do whatever climate means? I'm sure they weren't talking about the heating and cooling in the building. So what should have alerted him to the fact that it didn't have anything to do with an obvious characteristic of the district? Well, I will step back and go to my arguments that I put forward in my brief, which were that he certainly had ample time to develop and investigate what the climate survey involved. How was he supposed to do that, in your view, if his interrogatories aren't being answered by you? I spoke with Planners Council several times asking him to explain to me what he was looking for. I hadn't heard of the climate survey. Climate surveys are a tool generally used by command staff to take the temperature of any work group, district, task force, canine unit, for example. And it can cover a broad range of topics from, are there practices that are inconsistent with training? It can be a house morale within the district. It can be, are you overworked and understaffed? It's used as a tool for the last 20 years, depending on what the command staff is interested in finding out about the district. It's voluntary, it's typically given confidentially, so there aren't names attached with statements. I explained this to the Appellants Council. He asked me about 30 days before the end of discovery. I said I hadn't heard about it because they didn't call me and tell me about it because it had nothing to do with Gonzales. Gonzales had been out of the workplace for two years. But I take it the record doesn't establish when they initiated this survey? The record does not establish that, that's correct. So if it had been going on for three years, then it would have overlapped with, maybe that's not what they do, but I guess we just don't know, do we? Well, I know, but it's not in the record. But it had been started that year, 2013. But my point is, when he asked me, I said, huh, I hadn't heard about that, I'll call and find out about it. He still had about 20 days to seek a 30B6 deposition, subpoena ducas tecum, and ask anyone, anyone at IAD, anyone in the Chief's Command, he could have asked Flowers or Kerry, have you been interviewed for this climate survey? Had he already deposed Flowers at this point? He did not conduct one single deposition. And then he filed after the, so he had about 20 days, I was checking, it took a little while for me to track down what was going on. Lo and behold, his client had filed, Mr. Gonzalez had filed an open records request, which had been denied based upon it being an open file. Then after the close of discovery, he, plaintiff's counsel, filed a motion to compel. And that was heard by the court. And the judge said, no, no, no, you don't get to have the motion to compel, you didn't ask for it in the discovery. But he threw the plaintiff a really meaty bone. You know, he should have been like the butcher's dog grinning. He gave him a month and a half extra to conduct any, quote, any deposition you wish. Okay, a month and a half, why not a subpoena ducas tecum? Why not a Rule 30b-6 notice? You know, and then also... Can I interrupt you for a second? Could you say that Judge Adelman said that he was denying the discovery because he hadn't asked for it? I mean, that's not what the order says. There's this thing called court minutes of conference, and I gather from that that there was no court reporter. It just says that the request for discovery into the ongoing climate survey investigation is denied. It doesn't say because it's late. It doesn't say because it's irrelevant. It doesn't exactly say why. So what I'm wondering is, did you submit it in response to the motion to compel? I mean, I know you argued the timeliness issue, which I get. Did you submit anything to the district judge that established or that tried to establish that this survey didn't have anything to do with complaints about discrimination? I, in the response to the motion to compel, I submitted a response and an affidavit and explained that it was a climate survey, that it was not based upon complaints of discrimination. So there was an affidavit that said that? I believe I put that in my affidavit, but I also... Because it was your affidavit. Right. It was my affidavit attaching my letter to plaintiff's counsel explaining what had been told to me by IAD. I also attached the public records request, and I argued it in the motion. Also, well, I agree that the minutes are not very forthcoming. I mean, they're kind of short on facts. But Judge Adelman did reference the fact that he had an open records remedy of filing a mandamus action to seek the record. But I think when he threw him that meaty bone of, okay, you get an extra month and a half of depositions, I was expecting we'd have lots of depositions talking about the climate survey. And if that had been pursued, then he would have known that it didn't pertain to Gonzalez, and it didn't pertain to discrimination. It was... So Judge Adelman might have been thinking... He might have been... Because I didn't like, actually, his comment that there was this mandamus remedy for the open records side. Sticking within the lawsuit, the real question is whether this was within the scope of discovery. But Judge Adelman might have thought once the depositions have been taken, there'll be more information elicited. Maybe the climate survey will come in, may be finished by then. At least we'll know what it's about. Just other questions like that would be answered. Right. And also, at the time he gave him an extra month and a half of depositions, I had already filed my motion for summary judgment. So my cards were on the table. He dismissed that without prejudice and asked me to refile after the month and a half of depositions. So the plaintiff had perfect notice of what I was arguing, what I believed the evidence to be, my theory of the case. But he did nothing, nor did he argue a 56 sub D that he was so prejudiced by not having the climate survey that he simply couldn't respond to summary judgment. He didn't mention it again. He didn't challenge the denial of the motion to compel ever again. He didn't set up any depositions. He didn't ask for, he didn't do the mandamus action, and he didn't plead that in his summary judgment response. So, you know, how many kicks at the can do you get? Okay, well maybe we'll let you leave us with that thought. So thank you very much. Anything further? Mr. Andre? Thank you, Judge. Just briefly, the only thing that I want to respond to is the idea that that this survey has nothing to do with discrimination and that there's something in the record that establishes that because I don't see that. In fact, what I see is that Mr. Gonzalez asked for a survey that he specifically said dealt with Captain O'Leary, dealt with complaints of discrimination, and the response was not, we don't have a survey that fits that definition. The response was simply your request is untimely, which I don't believe it was. I think there's a duty on their part, and not counsel specifically, perhaps and I'm accepting she didn't know about this, but there ought to be some sort of communication where if you've got a discrimination case going out of District 4, and then you've got a survey about what I believe the record strongly suggests is discrimination in that district, that is something that the city should be aware of and reasonably supplement their own discovery responses. Thank you. Alright, thank you. Thanks to both counsel. We'll take the case under advisement. The court will be in recess.